568 A.2d 612

POCONO GREEN, INC., Appellee,

v.

BOARD OF SUPERVISORS OF KIDDER TOWNSHIP (CARBON COUNTY), Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 26, 1989.

Decided Jan. 16, 1990.

602

William E. McDonald, for appellant.

Leonard L. Wolffe, Roger Nanovic, Jim Thorpe, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On March 13, 1985, a real estate developer, Pocono Green, Inc., submitted an application for approval of a preliminary plan of a planned residential development (PRD) to the Planning Commission of Kidder Township, Carbon County. The application contains information required for a PRD by section 707 of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10707, Kidder Township's Zoning Ordinance, and the township's Subdivision and Land Development Ordinance. Among the required materials was Pocono Green's "Report on Sewage and Water Facilities," which explained that because no municipal central sewage treat-

ment facilities were available, the Pocono Green development would have its own facility which would discharge "final treated effluent ... to an unnamed tributary of the Lehigh River ... located at 41 degrees, three minutes N. latitude and 75 degrees, forty-five minutes W. longitude."

The Planning Commission then issued a report and recommendation to the Supervisors, as required by the Subdivision Ordinance, recommending that the application be given tentative approval, conditioned upon the approval of the Pennsylvania Department of Environmental Resources (D.E.R.) for sewage and water systems. On April 29, 1985 the Board of Supervisors conducted a public hearing at which Pocono Green presented its preliminary plan. At this hearing, Pocono Green's engineer testified that the sewage treatment plant was "feasible from an engineering standpoint." Additionally, as required by the Subdivision Ordinance, the developer included in its preliminary plan a letter from D.E.R. stating that Pocono Green's preliminary plans for sewage disposal were acceptable to the agency.[1]

Two local residents testified that the stream into which Pocono Green proposes to dump treated sewage sometimes runs dry and that the stream flows into a pond which does not drain except when there is a flood. Although Pocono

---

1. The letter of preliminary approval, dated April 1, 1985, from the Bureau of Water Quality Management, Department of Environmental Resources, stated:

   This department has reviewed the preliminary plans for Pocono Green Development, located in Kidder Township and East Side Borough, Carbon County PA. The proposal submitted utilizing private water supply and distribution and for sewage collection, treatment and disposal is acceptable to the Department of Environmental Resources.

   This letter constitutes concurrence by the Department of Environmental Resources, Bureau of Water Quality Management, of the preliminary proposal only, and should not be construed to represent a permit of any nature. It is still necessary that ... planning modules, indicating approval of this proposal or a revision to the official plans of the municipalities involved, be submitted to the Department of Environmental Resources for review and approval. More detailed plans and specifications of the water supply, sewage collection and treatment will also be reviewed at a later date as part of other permit applications. Any additional Federal, State and local planning and/or permit requirements must be met.

Green's engineer was unfamiliar with the stream, he acknowledged that if the stream runs dry and does not flow from the pond,[2] there might be some difficulty getting a final D.E.R. approval. As he put it: "Well, you could see the problems we would have with D.E.R., getting this worked out, no doubt about it." N.T. 77a.

On June 17, 1985 the Supervisors issued their report denying Pocono Green's application based on the following findings of fact and conclusions of law.

### FINDINGS OF FACT
* * * * * *

22. Article 4 of the Kidder Township Zoning Ordinance provides there can be no habitation of any portion of the development until the residential use types are attached to a centralized water system and a centralized sewage disposal system. The Municipalities Planning Code indicates that municipalities shall determine the feasibility of proposals for the disposition of sanitary waste and storm water as being in the public interest. We find that the feasibility of the proposal for the disposition of sanitary waste has not been shown by the developer.

An issue was raised at the public hearing that the stream into which the developer proposes an effluent discharge goes dry. A second issue was raised that said stream runs to a pond from which there is no discharge of water. The testimony of developer's engineer in addressing both of these issues is inconclusive and contradictory. Statements (as found in the record) were made by residents in the area of the stream on record that it does run dry and the pond does not discharge except in flooding.

23. We find after review of all evidence presented that the developer failed to show that the proposed sewage treatment plant which will discharge into a stream which

---

2. There was also testimony that the stream runs through the front yard of at least one property owner near the proposed development site.

runs dry and leads into a pond that does not discharge to be feasible.[3]

\*  \*  \*  \*  \*  \*

## CONCLUSIONS OF LAW

\*  \*  \*  \*  \*  \*

The evidence before the Board of Supervisors is sufficiently deficient in showing of the feasibility of the proposed sanitary waste disposal system, being a stream discharge sewage treatment plant. A proposed system which discharges into a stream which often runs dry and leads into a pond with no discharge point is detrimental to the environment, the immediate residents of the area, and all residents of Kidder Township in general.

## DECISION

It is decided that the preliminary plan of Pocono Green as submitted is rejected based on the foregoing Findings of Fact and Conclusions of Law with respect to a lack of showing of feasibility of the proposed sanitary waste disposal system....

On July 16, 1985 Pocono Green filed a notice of appeal in the Court of Common Pleas of Carbon County. On June 19, 1987 the court affirmed the Supervisors' decision without taking additional testimony. Pocono Green then appealed to Commonwealth Court, which reversed 117 Pa.Cmwlth. 396, 543 A2d 1253.

Commonwealth Court reasoned that the board had abused its discretion in determining that the developer had failed to sustain its burden of proving the feasibility of the proposed sanitary waste disposal system. The court indicated that although Pocono Green's engineer was unfamiliar with the flow of sewage into the creek and pond, the approval by D.E.R. and the testimony of a professional engineer that the proposed sewage system was "feasible from an engineering standpoint" constituted substantial evidence of the

---

**3.** Apparently this means that the developer's sewage treatment plan has not been demonstrated to be feasible.

feasibility of the plan. The board filed a Petition for Allowance of Appeal, and this Court granted allocatur to address the question of whether Commonwealth Court was correct in determining that the board abused its discretion.

Pocono Green argues that the Supervisors' decision was in error in that the township's regulations on PRD applications defer to D.E.R. sewage treatment standards, and compliance with those standards, as evidenced by the D.E.R. preliminary approval, constitutes "feasibility" of a preliminary PRD plan. We disagree.

Section 707 of the Municipalities Planning Code, 53 P.S. § 10707, provides that an application for tentative approval of a development plan for a PRD shall be filed before the planning agency or the governing body of the municipality, and the application shall disclose:

\* \* \* \* \* \*

(v) the feasibility of proposals for water supply and the disposition of sanitary waste and storm water....

53 P.S. § 10707(4)(v). Section 10709 further provides that the governing body or planning agency may either grant or deny tentative approval of the development plan as submitted. 53 P.S. § 10709(a).

The "feasibility" of the proposed sanitary waste plan, which the local agency is authorized to decide, is determined, according to Commonwealth Court, by "substantial evidence to support a finding that the solution of a problem is likely to succeed." The burden, of course, is on the developer to prove the feasibility of his plan, and the local agency must determine feasibility by reference to the material presented by the developer.

With these principles in mind, we return to the claim that D.E.R.'s preliminary approval of the sewage treatment plan constitutes "feasibility" of the plan. Accepting Commonwealth Court's definition of "feasibility" as a showing by substantial evidence that the plan is likely to succeed, it is apparent that a preliminary agency approval is irrelevant to the plan's likelihood of success where the developer's

expert indicates that he is not familiar with the stream into which the treated sewage would flow and that it will be difficult to persuade D.E.R. to issue a final approval of the sewage treatment proposal. At issue is not whether the sewage treatment plant, considered in a vacuum, is technically adequate, as is indicated by D.E.R.'s preliminary approval. Rather, of course, at issue is the feasibility of the developer's plan *as it will operate at this particular location.*

The approval of PRD applications by local agencies is not intended to be an academic exercise in creating drawing-board images to be considered in isolation from the circumstances in which they will function, but rather a determination of whether a particular drawing-board image will work as it was intended in a particular location in the real world. That is why the approval is contingent upon the feasibility of the plan, not merely upon the acquisition of a preliminary approval from D.E.R.

Further, the statute clearly places the burden of establishing this feasibility on the developer, who must submit substantial evidence that the plant will function properly where it is to be located. When the developer cannot answer questions about how the facility will operate at this location, the township may properly determine, indeed must determine, that the developer has not proved the feasibility of its plan by substantial evidence. For these reasons, the claim that D.E.R.'s preliminary approval should constitute "feasibility" under the statute is obviously without merit.[4]

4. Pocono Green cites our recent decision in *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 555 A.2d 72 (1989), in support of the argument that the township cannot deny approval of a PRD application on the basis of a standard not in its regulations. In *Coretsky* the township, pursuant to section 10508 of the Municipalities Planning Code, was required to specify the section of the statute or ordinance upon which its denial of approval was based:

(2) When the application is not approved ... the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

Next, the developer contends that the Supervisors' reasons for denying approval are legally deficient. In particular, the developer argues that the township may not deny approval of a PRD application on grounds not contained in its ordinances. The grounds complained of are the township's findings that the proposal requires the discharge of treated sewage into a stream that runs dry leading into a pond that does not discharge. These grounds, according to the developer, are not present in the township's land use ordinance. We understand this argument to mean that because the township has no ordinance prohibiting the discharge of sewage into streams that run dry leading to ponds with no outlet, such grounds may not be used to support a denial. Thus, according to the developer, because the township's ordinance contains no sewage requirements except that the treatment plan be approved by D.E.R., and because D.E.R. has issued a preliminary approval, the denial was in error. This argument is actually only a variation on the first argument, and also is completely meritless. The developer overlooks that the burden of presenting substantial evidence of feasibility is with him, and when he is unable to answer objections to his plan, and, in fact, indicates that he may have difficulty with the approval, the mere possibility that D.E.R. will finally approve his plan falls short of meeting that burden.[5]

53 P.S. § 10508(2). The township did not specify the statutory provision upon which its denial of approval was based, and this Court held that the denial was, therefore, improper.

*Coretsky* has no application to the present case. In this case, the township is authorized by section 10707 of the Municipalities Planning Code to determine the feasibility of the developer's plan for sewage treatment. Such a determination, of course, must be made on the basis of information submitted by the developer. When that information does not support the feasibility of the sewage disposal plan, the township is authorized to disapprove of the application.

**5.** The developer also makes two additional related claims. First, it asserts that the Supervisors failed to provide specific objections to the plan. We disagree. The specific objections to the plan are that the developer did not meet his burden of establishing "feasibility" by presenting substantial evidence that the plan was likely to succeed.

Next, the developer claims that the requirement of D.E.R. approval is adequate in itself to protect the public interest, and therefore, that

■ Finally, the developer argues that the denial was in error because the township's findings were not supported by substantial evidence. According to the developer, it will have to meet D.E.R.'s most stringent criteria for effluent quality because the stream into which it proposes to discharge treated sewage is classified as a "high quality cold water fisher[y]." Since the township failed to make any findings as to the capabilities of the developer's proposed method of treatment, the engineering characteristics of the treatment plant, or the specific effect of the treatment plant on the stream, the developer contends that the township's determination was unsupported by substantial evidence. This argument, too, is without merit. Once again, the burden is on the developer to establish the feasibility of the sewage treatment plan, not on the township to establish its nonfeasibility. When the developer fails to meet that burden by substantial evidence, the township has no alternative but to determine that the plan is not feasible.

■ It is true that the township, pursuant to section 709 of the Municipalities Planning Code, is required to set forth reasons for the denial "with particularity in what respect the development plan would or would not be in the public interest, including, but not limited to, findings of fact and conclusions on the following:"

\*    \*    \*    \*    \*    \*

(4) the physical design of the development plan and the manner in which said design does or does not make adequate provision for public services, ... and further the amenities of light and air, recreation and visual enjoyment;

the board improperly withheld approval. Whether D.E.R.'s approval is sufficient to protect the public interest is an argument more appropriately addressed to the legislature than to this Court. The General Assembly specifically chose to empower local governing bodies to approve or disapprove the feasibility of certain components of planned residential developments, and the developer may not usurp this statutory scheme by substituting its opinion for that of the General Assembly as to how the public interest should be protected.

(5) the relationship, beneficial or adverse, of the proposed planned residential development to the neighborhood in which it is proposed to be established;....

53 P.S. § 10709(b)(4), (5). It should go without saying, however, that when a developer has proposed a sewage treatment plan unsupported by substantial evidence demonstrating the feasibility of dumping treated sewage into a stream that runs dry, ending in a pond with no outlet, the public interest is at risk, the physical design of the proposal is deficient, the manner of the deficiency of public service is obvious, and the relationship to the neighborhood is adverse. The township was certainly not, therefore, derelict in its findings or its conclusions of law supporting the denial.

The order of Commonwealth Court is reversed. The order of the Court of Common Pleas of Carbon County is reinstated.

McDERMOTT, J., did not participate in the consideration or decision of this case.

LARSEN, J., files a dissenting opinion, which is joined by ZAPPALA, J.

LARSEN, Justice, dissenting.

I dissent. Although there is some emotional appeal to Mr. Justice Flaherty's majority opinion in this case, there is absolutely no legal basis for the Court's reversal of Commonwealth Court.

The Pennsylvania Municipalities Planning Code, Section 11005–A provides in relevant part:

... If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court *if supported by substantial evidence....*

53 P.S. § 11005–A. There is no evidence of record that the unnamed tributary of the Lehigh River into which appellee, Pocono Green, Inc., planned to discharge treated effluent runs dry occasionally or that it flows into a pond with no outlet. The record herein reveals that appellee, during the public hearing on its application for preliminary approval of a planned residential development, produced 1) the sworn testimony of a registered professional engineer stating that appellee's plans for central sewage treatment and disposal were feasible, and 2) a letter from the Department of Environmental Resources (DER) giving preliminary approval to those plans. The residents who spoke at the public hearing regarding the condition of the Lehigh River tributary into which appellee proposed discharging treated effluent were not sworn in as witnesses and were not subject to cross-examination during the proceedings. Thus, it is clear that the determination of the Board of Supervisors, i.e., that the sewage treatment proposal was not feasible because the tributary ran dry at times and ended in a pond with no outlet, was not supported by substantial evidence.[1]

Additionally, a stream that flows intermittently can indeed serve as a recipient of treated waste, as can a pond with a "detention time of 14 days or more." *See* 25 Pa.Code § 95.6(a) Discharges to lakes, ponds, and impoundments; *Abraham v. Commonwealth of Pennsylvania, Department of Environmental Resources*, 1980 EHB 146 (DER can require "very high degree of treatment" to sewage where receiving stream does not flow year round).

As appellee met its burden of proving that the proposed sewage treatment and disposal system was feasible, appellant, the Board of Supervisors of Kidder Township, abused its discretion in denying preliminary approval to appellee's application. The DER has the expertise to determine whether or not a permit can be issued to appellee based upon the conditions existing at the site. And, indeed, a

1. A court may take judicial notice of geographical facts; however, the extent of flow or navigability of a given watercourse must "be established by proof." *See Brush v. Lehigh Valley Coal Co.*, 290 Pa. 322, 328, 138 A. 860 (1927).

permit will not issue and the planned residential development will not be constructed if appellee's plans are in any way inadequate or constitute a threat to the environment. It is not for the Board of Supervisors or for this Court to determine, on the basis of the unsworn statements of lay persons, that a particular sewage treatment and disposal system is not feasible.

Accordingly, I would affirm the decision of Commonwealth Court.

ZAPPALA, J., joins in this dissenting opinion.