676 A.2d 216

**Charles E. SHOEMAKER and Ruth L. Shoemaker, Husband and Wife, Appellees,**

v.

**LEHIGH TOWNSHIP, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1996.

Decided May 22, 1996.

Henry S. Perkin, Allentown, for Lehigh Tp.

Charles E. Shoemaker, Jr., Allentown, for Shoemaker.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

This case involves a dispute over funds in an escrow account. We granted allocatur because the Order entered by the Commonwealth Court appeared inconsistent with its opinion. Despite finding that the Appellees and the Buyers of the Appellees' subdivision lots were both the beneficiaries of a constructive trust, the court remanded for issuance of an order directing the return of the funds solely to Appellees. Because the record before us is inadequate to determine whose money was paid into escrow, we now affirm in part and reverse in part.

In January, 1973, Appellees submitted to Appellant, Lehigh Township (Township), several preliminary plans for subdivision approval of a tract of land Appellees acquired known as Blue Mountain Estates. The final subdivision plan that was submitted sought the development of 65 one-half acre lots. In August, 1973, the Township passed an ordinance that rezoned Appellees' tract of land into an R–20 Urban Residential District that permitted residential use on one-half acre lots.

The Township and Appellees then entered into a subdivision improvements agreement dated October 19, 1973. The 1973 Agreement required Appellees to provide financial security in the amount of $361,845.00 for the completion of certain municipal improvements in Appellees' subdivision; $269,662.80 of

this amount was intended to secure completion of on-site and off-site sewage (including capped sewers) facilities.

On May 10, 1977, the Township and Appellees executed a second subdivision improvement agreement that expressly rendered the 1973 Agreement null and void. The 1977 Agreement deleted the 1973 Agreement's requirement that Appellees construct on-site and off-site sewage facilities within their subdivision and instead required payment to the Township of $1,000 per lot sold. The agreement indicated that these funds paid the Township were to be deposited into an escrow account "earmarked" by the Township to be used in the future and at its sole discretion for the purpose of sewage within the subdivision. The 1977 Agreement further required that the Buyers of the lots inform the Township in writing that they were aware of this agreement and that they understood that the Township was under no obligation to make improvements within the subdivision to maintain any roads within the subdivision including keeping the roads clear of ice, snow or debris.

Subsequently, the parties executed agreements in 1978 and 1979 which closely paralleled the 1977 Agreement.

Between 1977 and 1985, twenty-four of the twenty-nine Buyers of lots sold in Appellees' subdivision executed and delivered to the Township releases, which were a condition precedent to the Township executing a release of its judgment and/or mortgage lien upon the particular lot sold. In accordance with the $1,000 payment per lot provision of the 1977, 1978 and 1979 Agreements, a total of $24,000.00 was paid into escrow which was held by the Township.

On October 31, 1985, Appellees gave to Greater–Bethlehem Savings & Loan Association, Appellees' first mortgagee, a deed in lieu of foreclosure of a mortgage on the property. On March 21, 1986, Appellees requested the return to them of all monies held by the Township, along with all interest accrued thereon. The Township refused to refund the money to Appellees.

Appellees filed a complaint in August, 1987, which sought to recover the $24,000 payments that had been made to the

Township upon the sale of each lot. Appellees sought the return of financial security posted with the Township and alleged the Township's (1) noncompliance with the Pennsylvania Municipalities Planning Code (MPC); (2) fraud; (3) negligence and misrepresentation; and (4) breach of contract.[1]

Following a non-jury trial, the court entered judgment in favor of the Township and against Appellees. In its opinion, the trial court rejected the claim that the Township breached its contract and concluded that the Township was never obligated to provide a public sewage system for Appellees' subdivision. Additionally, the trial court determined that the $1,000 per lot payment could not be deemed financial security intended to guarantee completion of sewerage improvements by Appellees, but rather constituted consideration paid by Appellees in exchange for the Township's releasing them from the 1973 Agreement's obligation to construct or pay for public sewerage improvements within the subdivision. Finally, the trial court found the allegations of fraud and negligent misrepresentation to be barred by the applicable statute of limitations.

On appeal a panel of the Commonwealth Court reversed the trial court's order and remanded to the trial court to issue an order directing the Township to refund the $24,000.00 escrowed to Appellees. The court began its analysis of Appellees claim of entitlement to the $24,000.00 fund by focusing on the fact that the Township had no authority to contract away sewage facilities planning approval based upon the Sewage Facilities Act, 35 P.S. § 750.1 et seq. and 25 Pa.Code § 71.51 and § 71.71, and Section 503 of the Municipalities Planning Code.[2] The court noted that such approval should have been

---

1. By the time this matter came before the Common Pleas Court, Appellees had been released from any obligations to construct or maintain improvements within the subdivision, and the Township had marked as satisfied its judgment note for $361,845.00, the amount of the financial security initially required from Appellees.

2. 25 Pa.Code § 71.51 provides, in pertinent part, as follows:

A municipality shall revise its official plan when:

a non-waivable requirement prior to the Township's final approval of Appellees' subdivision. See *Carroll Township Board of Supervisors v. Department of Environmental Resources*, 166 Pa.Commw. 562, 646 A.2d 738 (1994). The court determined that all portions of the agreements between Appellees and the Township that eliminated any required implementation of the sewage facilities within the subdivision, contravene the interests of public health, safety and welfare, and as such may be deemed void *ab initio.*

The Commonwealth Court found "[e]ven more relevant ... the fact that the $1,000 per lot payments were escrowed by the Township." The court reasoned that the very creation of this escrow fund gives rise to the reasonable inference of a constructive trust existing for the benefit of Appellees and the buyers of each lot. Under such arrangement, the court continued, the Township as trustee of the escrowed funds was under a fiduciary obligation to provide sewage facilities de-

(1) A new subdivision is proposed, except as provided by § 71.55 (relating to exceptions to the requirement to revise the official plan for new land development).
(2) The official plan, or its parts, is inadequate to meet the sewage needs of the new land development.
(3) Newly discovered or changed facts, conditions or circumstances make the plan inadequate to meet the sewage needs of new land developments.
25 Pa.Code § 71.71 provides, in pertinent part, as follows:
Municipalities are *required* to assure the proper operation and maintenance of sewage facilities within their borders.... Municipalities *shall* therefore, address long-term operation and maintenance in [ ... new land development plan revisions].... The establishment of a sewage management program as part of an official plan ... provides a method of assuring proper operation and maintenance of sewage facilities.... [Emphasis added.]
53 P.S. § 10503, concerning sewage facilities provisions found in subdivision and land development ordinances provides, in pertinent part:
The subdivision and land development ordinance may include, but need not be limited to:

 * * * * * *

(4) Provisions which take into account land development not intended for the immediate erection of buildings where ... water and sewage facilities and other improvements may not be possible to install as a condition precedent to final approval of plats, but *will be a condition precedent* to the erection of buildings on land included in the approved plat. [Emphasis added.]

spite its disclaimers otherwise. The court found that this was clearly evidenced during the January 27, 1992 Common Pleas hearing by the following testimony elicited from Donald B. Corriere, Esq., Solicitor for the Township.

[Cross-examination of Mr. Corriere]

Q. Well, you have testified now several times that the purpose of the fund was to correct defects or deficiencies or make repairs. Let me ask you to look at the 1977 Agreement?

A. Right.

Q. ... Show me any language in here that indicates that the thousand-dollars is earmarked for the making of repairs or remedies or to correcting deficiencies?

A. Well, my interpretation of Paragraph 9A which says which sums shall be earmarked by the Township to be used in the future at its sole discretion for the purposes of sewerage within the subdivision known as Blue Mountain Estates, is a very broad and general clause that allows the Township to utilize those funds for any purpose of sewerage problems in the Township.

Q. In fact, Mr. Corriere, if you look at Paragraph 5A, 7A and 9A, you see in essence the same language over and over again, a thousand dollars shall be earmarked by the Township to be used in the future and at its sole discretion for the purpose of sewerage within the subdivision known as Blue Mountain Estates?

A. Right.

The Commonwealth Court concluded that the fact that the Township never ensured implementation of any sewage system to benefit the residents of Blue Mountain Estates would dictate, from an equitable perspective, return of the escrowed funds to the buyers. To allow the Township to eschew this obligation and, at the same time, retain the escrowed monies, would be tantamount to unjust enrichment.

While we agree with the Commonwealth Court's analysis that the creation of the aforementioned escrow fund gives rise to the existence of a constructive trust, we do not believe nor

does the record bear out the fact that the Appellees and the Buyers of the Appellees' subdivision lots are one and the same for purposes of establishing the beneficiaries of the constructive trust, nor do we believe, based upon this record, that the Appellees and the Buyers of the Appellees' subdivision lots are necessarily the sole beneficiaries of the constructive trust.[3]

Appellees contend that they paid the $24,000.00 into the escrow account as either security for the completion of the public sewerage improvements or for the actual completion of the public sewerage improvements by the Township. Appellees therefore argue that all the escrowed funds including the accumulated interest must now be returned to them.

The Township counters by claiming that if it must relinquish control over the escrowed funds, it must be to the Buyers of the lots in Blue Mountain Estates and not to Appellees. The Township argues that the escrow account does not exist for the benefit of Appellees because all the lots have been transferred by Appellees to third party Buyers and Appellees have been released from all obligations to make site improvements within Blue Mountain Estates. The Township contends that the escrowed account exists for the benefit of the residents of Blue Mountain Estates because the undisputed purpose of the escrow account is to allow the Township to make sewerage improvements within Blue Mountain Estates.

 In this Commonwealth, before a constructive trust can arise, it is necessary that the owner of the property must have acquired title to it in some way that creates the equitable duty in favor of the person who would benefit from the trust.

---

**3.** The Township argues that the Commonwealth Court erred as a matter of law by reversing the adjudication entered by the lower Court on the basis of theories of relief not litigated in the lower court. The Township also contends that the Commonwealth Court's decision is not supported by the record. Finally, the Township claims that the Appellees are not entitled to relief on the basis of theories of relief asserted by Appellees but not considered by Commonwealth Court. These issues were not raised in the Township's petition for allowance of appeal and are therefore waived. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974).

*Balazick v. Ireton,* 518 Pa. 127, 541 A.2d 1130 (1988) citing *Pierro v. Pierro,* 438 Pa. 119, 264 A.2d 692 (1970).

Examination of the record reveals that the 1977, 1978 and 1979 Agreements in relevant part provide as follows:

### *1977 AGREEMENT*

FIFTH: Upon the signing of this Agreement, the Township shall release its lien of judgment on Lot 1, Block C, lot 3 Block B, and Lot 1 Block A, and shall further issue building permits for said lots upon the following terms and conditions:

(a) *Out of the purchase price of each lot the Buyer of said lot shall pay the Township the sum of One Thousand Three Hundred Thirty ($1330) Dollars, of which, One Thousand ($1,000) Dollars shall be earmarked by the Township to be used, in the future, and at its sole discretion, for the purpose of sewerage within the subdivision known as Blue Mountain Estates,* and the sum of Three Hundred Thirty ($330) Dollars to be used to pay legal and engineering fees incurred by the Township in said subdivision.

\*　　\*　　\*　　\*　　\*　　\*

SEVENTH: Upon the satisfactory completion of the grading and base course construction in accordance with Paragraph SIXTH, the Township shall release its lien of judgment on lot 15, Block A, and lot 16, Block A, and shall further issue building permits for said lots upon the following terms and conditions:

(a) *Out of the purchase price of each lot the Buyer of said lot shall pay the Township the sum of One Thousand ($1,000) Dollars, which such shall be earmarked by the Township to be used, in the future, at its sole discretion, for the purpose of sewerage within the subdivision known as Blue Mountain Estates.*

\*　　\*　　\*　　\*　　\*　　\*

NINTH: Upon the satisfactory completion of binder course construction in accordance with Paragraph EIGHTH, the Township shall release its lien of judgment on

lot 13, Block A, and lot 14, Block A, and shall further issue building permits for said lots upon the following terms and conditions:

(a) *Out of the purchase price of each lot the Buyer of said lot shall pay to the Township the sum of One Thousand ($1,000) Dollars, which sum shall be earmarked by the Township to be used, in the future, at its sole discretion, for the purpose of sewerage within the subdivision known as Blue Mountain Estates.*

R. 29a–31a (emphasis added).

### *1978 AGREEMENT*

THIRD: Upon the execution of this Agreement, the Township shall release its lien of judgment on Lot 19 of Block A, and shall further issue a building permit for said lot upon the following terms and conditions:

(a) *That out of the purchase price of this lot, the sum of One Thousand ($1,000) Dollars, to be earmarked by the Township to be used, in the future, and at its sole discretion, for the purpose of sewerage within the subdivision known as Blue Mountain Estates, shall be paid to the Township.*

\* \* \* \* \* \*

FOURTH: Upon the sale of lots 18, 20, 21, and 5 of Block A, the Township shall release its lien of judgment on said lots and shall further issue building permits for said lots upon the following terms and conditions:

(a) *That out of the purchase price of each lot the sum of One Thousand ($1,000) Dollars, to be earmarked by the Township to be used, in the future, and at its sole discretion, for the purpose of sewerage within the subdivision known as Blue Mountain Estates, shall be paid to the Township.*

R. 42a–43a (emphasis added).

314

*1979 AGREEMENT*

Notwithstanding anything to the contrary in this Agreement, and in consideration of the Township permitting onsite sewage disposal systems on certain lots in this subdivision, it is agreed that as a further condition of obtaining a release of the lien of mortgage on any lot, *that out of the purchase price of each lot the Buyer or Seller of said lot shall pay to the Township the sum of One Thousand ($1,000) Dollars, which sum shall be earmarked by the Township to be used, in the future, at its sole discretion, for the purpose of sewerage within the subdivision known as Blue Mountain Estates.*

R. 80a–81a (emphasis added).

██ Thus in the 1977 Agreement, the Buyer of the lot was to pay one thousand dollars to the Township. The 1978 Agreement only indicates that one thousand dollars be paid out of the purchase price of the lot(s), but not who it should be paid by. The 1979 Agreement provides that out of the purchase price of each lot the Buyer or Seller of said lot was to pay one thousand dollars to the Township. Accordingly, the escrowed funds originally belonged to either Appellees or the Buyers of the lots.

The record also indicates that on October 31, 1985, Appellees gave to the Greater Bethlehem Savings and Loan Association, Appellees' first mortgagee, a deed in lieu of foreclosure of a mortgage on Blue Mountain Estates. It is, however, unclear from the record what effect, if any, the deed in lieu of foreclosure had on Appellees' interest in the escrowed funds.

██ Because the Appellees or the Buyers of the lots detailed in the 1977, 1978 and 1979 Agreements paid the funds which made up the escrow account, the equitable duty in favor of persons who would benefit from the constructive trust runs not only to the Appellees, but to the Buyers as well. Additionally, Greater–Bethlehem Savings and Loan Association may possess an interest in the escrowed funds by virtue of the deed in lieu of foreclosure.

The portion of the Commonwealth Court's Order reversing the order of the Common Pleas Court is affirmed. The remainder of the Commonwealth Court's Order is vacated. The case is remanded to the Common Pleas Court to conduct a hearing consistent with this opinion and thereafter issue an order directing the Township to refund the escrowed funds and accumulated interest consistent with its findings.

Jurisdiction relinquished.

NEWMAN, J., did not participate in the consideration or decision of this case.