934 A.2d 1162

**UPPER SOUTHAMPTON TOWNSHIP**

v.

**UPPER SOUTHAMPTON TOWNSHIP ZONING HEARING BOARD.**

**Appeal of Clear Channel Outdoor, Intervenor.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2006.

Decided Nov. 20, 2007.

Douglas Maloney, Esq., Begley, Carlin & Mandio, L.L.P., Langhorne, for Clear Channel Outdoor.

Donald Everett Williams, Esq., Williams & Lare L.L.P., Robert J. Sugarman, Esq., Sugarman & Associates, P.C., Philadelphia, for Upper Southampton Township.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice CASTILLE.

We granted review in this appeal from the Commonwealth Court to explore the question of whether the construction of billboards qualifies as "land development" for purposes of the Municipalities Planning Code, 53 P.S. § 10107 ("MPC"), and the Upper Southampton Township Subdivision and Land Development Ordinance § 202 ("SALDO"), thereby authorizing a township to require land development approval before the billboards can be erected. We hold that the term "land development" does not encompass the construction of billboards and, therefore, we reverse the Commonwealth Court.

Appellant Clear Channel Outdoor proposed to erect six billboards on four lots in Upper Southampton Township, Bucks County, and entered into leases with the owners of the four lots, which were already being used for commercial purposes. The proposed billboards would be free-standing, V-shaped, double-sided signs measuring fourteen by forty-eight feet, attached to a single pole and illuminated by indirect lighting. The Township Ordinance prohibited the construction of any billboards in the Township, a limitation which Clear Channel and another billboard company successfully challenged in an unrelated matter. *Baker v. Upper Southampton*

*Township Zoning Hearing Bd.,* 830 A.2d 600 (Pa.Cmwlth. 2003), *appeal denied,* 578 Pa. 690, 849 A.2d 1206 (2004).

After the conclusion of the *Baker* appeal, Clear Channel submitted separate applications for a sign permit and a building permit to the Township. The Township Zoning Hearing Officer rejected both applications, finding that the applications required the submission of land development applications pursuant to the SALDO. Clear Channel appealed to the Upper Southampton Township Zoning Hearing Board, which consolidated Clear Channel's appeal with an appeal of another billboard company, Outdoor Partnership, L.L.C., involving the same issue, that is, whether a land development application was required for the construction of billboards. The Zoning Hearing Board held three hearings and rendered separate written decisions in the two appeals, finding in both instances that the proposed construction of billboards did not require land development approval and, therefore, the permits had been wrongly denied.

The Township appealed to the Court of Common Pleas of Bucks County. Again, the appeal was consolidated with that of Outdoor Partnership, as the two appeals involved identical issues. The court took no additional evidence and on January 10, 2005, the trial court reversed the Zoning Hearing Board, finding that the Board had misread the MPC and the relevant Township's ordinances enacted under authority of the MPC.

The MPC's definition of land development and that contained in the SALDO are consistent and nearly identical, with the MPC providing:

**"Land development,"** any of the following activities:

(1) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:

(i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or

(ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more

existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

(2) A subdivision of land.

(3) Development in accordance with section 503(1.1).

53 P.S. § 10107.[1] The trial court held that the erection of billboards on the subject properties, which contained existing commercial structures, constituted an allocation of land or space between two or more occupants under subsection (1)(ii) of this definition, and therefore, fell within the MPC and SALDO definitions of land development. The court opined that the proposed construction lacked the "unity in the ownership or use of the properties" that would defeat a zoning authority's claim that the proposed use constituted land development. Instead, the court found that "a new use, belonging to and operated by a new and different entity . . . will be established on land already owned, occupied and used by another." Trial Ct. Op. at 11. In a supplemental opinion filed after Clear Channel appealed to the Commonwealth Court and submitted its Statement of Matters Complained of on Appeal, the court expanded on this conclusion as follows:

> [T]he inescapable conclusion remains the same. Each of the parcels which are the subject of this litigation will be allocated between the owners and/or leasehold occupants of the commercial buildings which already exist on each parcel and [Clear Channel]—who will erect substantial structures, each of which will occupy a definite and unchanging portion of the parcel. [Clear Channel] will have significant legal rights to use that fixed location to the exclusion of any conflicting use or user. Each fixed sign location will have a use entirely distinct and independent from the uses already existing on these properties.

Supplemental Op. at 4.

The Commonwealth Court affirmed in a published opinion, agreeing with the trial court that the allocation of land to the

---

1. The SALDO does not include subsection (3) and differs slightly in terms of punctuation, but the pertinent language is identical.

construction of billboards constituted land development within the meaning of the MPC and the SALDO. *Upper Southampton Township v. Upper Southampton Township Zoning Hearing Board*, 885 A.2d 85 (Pa.Cmwlth.2005). The court contrasted the situation *sub judice* with prior decisions in which it had held that the expansion of capacity of an existing antenna or pole did not constitute land development because there was no allocation of land involved. *See Marshall Township Bd. of Supervisors v. Marshall Township Zoning Hearing Bd.*, 717 A.2d 1 (Pa.Cmwlth.1998); *Tu–Way Tower Co. v. Zoning Hearing Bd. of Township of Salisbury*, 688 A.2d 744 (Pa.Cmwlth. 1997). Further, the court pointed to cases where it had found that the allocation of land to a specific purpose fell within the meaning of land development. *See Lehigh Asphalt Paving and Construction Co. v. Board of Supervisors of East Penn Township*, 830 A.2d 1063 (Pa.Cmwlth.2003); *White v. Township of Upper St. Clair*, 799 A.2d 188 (Pa.Cmwlth.2002). Finding the case *sub judice* to be analogous to *Lehigh* and *White,* the court deemed them to be controlling.

Before this Court, appellant Clear Channel argues that the lower courts' finding that land development approval is required results from an artificially narrow and hyper-technical reading of the statutory definition of land development. Under the reasoning in the lower courts, appellant argues, if the owner of the property at issue here had elected to construct signs of identical proportions to those proposed here, a land development plan would not be necessary because there would be no allocation of land between two occupants. Thus, according to appellant, the sole reason for the requirement in this instance is the fact that the sign and property would be owned by separate entities, a fact which has nothing to do with the development effect upon the land. If the lower court decisions stand, appellant asserts, any miscellaneous use structure not owned by the property owner would implicate the cumbersome procedure involved in securing approval for a land development project.

Appellant further contends that a common sense approach to the statutory provisions governing land development recog-

nizes the legitimate interests of municipalities in controlling residential and non-residential development where that development involves sanitary sewer, water, storm water management, parking areas, driveways, roadways, curbs and sidewalks, and similar effects. The construction of a billboard does not implicate any of these concerns. Nonetheless, appellant notes, the Township permitting authorities possess broad power to ensure compliance with all applicable code requirements and to address any safety issues involved in the construction of billboards. This power, according to appellant, is vested in both the Zoning Officer and the Department of Licenses and Inspections, given that a proposal for the construction of a billboard must be approved by both. In fact, appellant asserts, the Zoning Officer's broad powers authorize him to request virtually all information that would be required in a land development plan pursuant to the SALDO in addition to any additional data he may deem appropriate. *See* Township Zoning Ordinance, § 902.k. The Township Zoning Ordinance, per Section 712, vests similar authority in the Department of Licenses and Inspections. Thus, appellant argues, there are sufficient provisions in place to meet the Township's legitimate interest and duty to ensure that the construction of large structures such as billboards conform to all applicable standards in the Zoning Ordinance.

Finally, appellant argues that the Commonwealth Court's decisions in this area are confused and that the court's decision in this instance is not consistent with those prior decisions. Citing to *Marshall Township, supra,* and *Tu–Way, supra,* appellant claims that if the construction of a tower and equipment cabinets on a developed property (*Marshall Township*) or the construction of three towers together with unmanned accessory buildings (*Tu–Way*) does not require land development approval, then construction of billboards, which require no accessory buildings, should not. According to appellant, the lower courts placed undue emphasis on the fact that appellant and the property owners entered into lease agreements for the placement of the billboards and, therefore, found *White, supra,* and *Lehigh Asphalt, supra,* controlling.

Appellant asserts that the *White* decision, though well-founded, is distinguishable because the telecommunications company there intended to install on a delineated parcel of land a communications tower and three adjoining buildings, all to be surrounded by a cyclone fence topped with barbed wire, along with a ¼ mile long, 20-foot wide road to provide access to the leased parcel. Appellant likewise distinguishes *Lehigh Asphalt,* which involved the expansion of a quarry operation, because the Township instructed the applicant to file a land development application, which was subsequently denied. By contrast, here, appellant sought permits for the construction of billboards, which were denied for failure to file a land development application.

Appellee Upper Southampton Township responds that the lower courts correctly determined that the construction of a billboard falls within the definition of land development contained in the MPC and the SALDO. The Township contends that the proposed billboards at issue are land developments because they divide or allocate land and space by means of a leasehold. Appellee asserts that the Commonwealth Court appropriately found that the leases conveying a portion of the property to appellant for the construction of the billboards constituted an allocation of a portion of the owner's property. As evidence of this allocation, the Township points to the provisions in the lease that (1) permit appellant to remove any objects that obstruct the billboard, and to trim any trees and vegetation and (2) grant property rights to appellant in the event of condemnation.

Appellee argues that *Tu–Way, supra,* is inapplicable because that case does not involve a change in the interest in land but rather a question of what company's antenna might be mounted on a tower, while here, the property interests of the owners will change due to the leases they entered into with appellant. Attempting to distinguish both *Tu–Way* and *Marshall Township,* appellee claims that both cases concerned attaching or assigning a position on a pole, which did not affect the land in any way. Appellee contends that *White, supra,* and *Lehigh Asphalt, supra,* are controlling because both deal

with an allocation of land by leasehold. In *White*, the allocation was of a discrete parcel of land; while in *Lehigh Asphalt*, the lease granted mineral rights to property that was used for residential purposes. Thus, according to appellee, in both cases the leases allocated land between two or more occupants, which is precisely what the leases do in this instance.

The question of whether the construction of billboards is "land development" under the MPC and the SALDO involves a pure question of law regarding statutory construction, and therefore, this Court's review is plenary and non-deferential. *E.g., McGrory v. Commonwealth, Dept. of Transp.*, 591 Pa. 56, 915 A.2d 1155, 1158 (2007); *MCI World-Com, Inc. v. Pennsylvania Public Utility Comm'n*, 577 Pa. 294, 844 A.2d 1239, 1245 n. 3 (2004); *Mosaica Academy Charter School v. Commonwealth, Dept. of Educ.*, 572 Pa. 191, 813 A.2d 813, 817 (2002). As in all matters involving statutory interpretation, we follow the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.* (the Act), which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). A statute's plain language generally provides the best indication of legislative intent. *See, e.g., McGrory*, 915 A.2d at 1158; *Commonwealth v. Gilmour Manuf. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003); *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only where the words of a statute are not explicit will we resort to other considerations to discern legislative intent. 1 Pa.C.S. § 1921(c). *See also Canvass of Absentee Ballots of November 4, 2003 General Election*, 577 Pa. 231, 843 A.2d 1223, 1230 (2004) (citing *O'Rourke v. Commonwealth, Dep't of Corrections*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001)); *Ramich v. Workers' Compensation Appeal Bd. (Schatz Electric, Inc.)*, 564 Pa. 656, 770 A.2d 318, 322 (2001). However, the Act also directs, as one of its "[p]resumptions in ascertaining legislative

intent," "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

The pertinent portion of the MPC definition of land development (and the identical SALDO definition) provides that land development includes " 'improvement' of land 'for any purpose involving . . .' (ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features." 53 P.S. § 10107(1)(ii); SALDO § 202. This is a very dense and broad definition, as the " 'division or allocation' it contemplates may be triggered by two different contingencies, *i.e.*, 'by means of' **or** 'for the purpose of' the open-ended examples that follow. It is notable (though not determinative since the examples are illustrative and not exhaustive) that the examples given do not speak to billboards. Both lower courts found that the properties on which the billboards were to be constructed were subject to leases, which were a 'means' " that allocated space to appellant on land already hosting other occupants. We do not believe the analysis can be that readily manifested.

The definition of land development, of course, does not exist in a vacuum. The significance of the definition is in the consequence of a finding that a proposed land use involves development; that consequence is the requirement of a land development plan. The statutory definition of development plan in the MPC plainly speaks of large-scale development and the issues that necessarily arise with such development:

> **Development plan,** the provisions for development, including a planned residential development, a plat of subdivision, all covenants relating to use, location and bulk of buildings and other structures, intensity of use or density of development, streets, ways and parking facilities, common open space and public facilities. The phrase **provisions of the development plan** when used in this act shall mean the written and graphic materials referred to in this definition.

53 P.S. § 10107. Section 10507 of the MPC, which sets forth the effect of a municipality's SALDO, likewise speaks to developments on a large scale:

> Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made, no street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, except in accordance with the provisions of such ordinance.

53 P.S. § 10507.

The MPC, when viewed as a whole, clearly is intended to apply to the allocation of land in such a way that issues related to public use, water management, sewers, streets and the like must be addressed. Consistently with this focus, the case law typically involves the division of a tract of land into smaller parcels for the construction of either residential or commercial buildings. *See, e.g., Kassouf v. Township of Scott*, 584 Pa. 219, 883 A.2d 463 (2005) (residential subdivision); *Mountain Village v. Bd. of Supervisors of Longswamp Tp.*, 582 Pa. 605, 874 A.2d 1 (2005) (110–unit expansion of mobile home park); *Meadows of Hanover Development, Inc. v. Board of Sup'rs of South Hanover Tp.*, 557 Pa. 478, 734 A.2d 854 (1999) (construction of homes and commercial buildings on 221–acre tract); *Shoemaker v. Lehigh Tp.*, 544 Pa. 304, 676 A.2d 216 (1996) (subdivision of property into 65 one-half acre residential lots); *Hart v. O'Malley*, 544 Pa. 315, 676 A.2d 222 (1996) (increase in number of units in mobile home park); *Pocono Green, Inc. v. Board of Sup'rs of Kidder Tp. (Carbon County)*, 523 Pa. 601, 568 A.2d 612 (1990) (planned residential development). We believe that it is precisely this kind of large-scale development of land, with an inevitable and concomitant effect on the public generally, that is contemplated by the MPC and the SALDO.

■ Again, although it is not determinative that billboards are not specifically mentioned among the examples of matters

that qualify as land development, the absence of that example is consistent with the statutory focus, in land development plans, upon large-scale issues such as the "location and bulk of buildings and other structures, intensity of use or density of development, streets, ways and parking facilities, common open space and public facilities." The type of division or allocation of land contemplated by the MPC—*e.g.*, a housing development, condominiums, or building groups—implicates many legitimate governmental concerns affecting the general public, such as sanitary sewer, water, storm water management, parking areas, driveways, roadways, curbs and sidewalks. The construction of a billboard simply does not give rise to any of those concerns. To read the statute otherwise would be unreasonable. Further, as appellant notes, the fact that a land development plan is not required for such a contemplated use does not mean that local authorities have no say in enforcing other zoning and licensing laws. To the contrary, the Zoning Officer and the Department of Licenses and Inspections possess broad authority with regard to the review of applications for the construction of billboards.

We also agree with appellant that this case is more closely analogous to *Marshall Township* and *Tu–Way* than to *White* or *Lehigh Asphalt.* In *Tu–Way,* the applicant intended to expand a communications tower or erect two new ones and to construct accessory buildings. The Commonwealth Court found that this proposal did not rise to the level of land development requiring a land development plan:

> Tu–Way is not proposing the development of its land with residential or nonresidential buildings. The fact that Tu–Way wishes to construct buildings accessory to its proposed towers does not raise its proposal to a level of land development. Tu–Way did not come before the Board to develop its land with residential or commercial buildings but, rather, to extend a tower or erect additional towers, activities which are not defined as land development under the MPC.

*Tu–Way,* 688 A.2d at 747.

Similarly, in *Marshall Township,* the applicant sought to replace an existing light pole located on a parking lot with a

larger light pole and antenna and to construct five equipment cabinets at the base of the pole. Relying on *Tu–Way*, the Commonwealth Court held that the construction of this larger pole and cabinets did not fall within the definition of land development. The common thread in these decisions is that the proposed use of the land did not include the construction of residential or commercial buildings. Thus, *Tu–Way* and *Marshall Township* comport with our plain reading of the statute to refer to the development of land involving the construction of residences or buildings that give rise to concerns regarding the provision of municipal services such as water management, streets, public convenience and the like.

By contrast, *White* and *Lehigh Asphalt* both involved a greater and more extensive use of land than the mere construction of a billboard. The applicant in *Lehigh Asphalt* sought to extend existing mineral rights by expanding its quarry over an undetermined amount of land. The *White* applicant intended to construct a 350–foot tower in a public park along with three equipment buildings, all surrounded by an 8–foot cyclone fence topped with barbed wire. The applicant also planned to construct a 20–foot wide access road to the site of the tower. Both of these proposed uses contemplated a substantial encroachment upon the land.

In the case *sub judice*, appellant proposes to construct a single billboard on each of the properties, which entails only the construction of the pole and sign atop the pole with no accessory buildings, fences or access roads. None of the concerns addressed by land development plans is applicable to this minor use of the properties in question. In our view, it would be an absurd or unreasonable reading of the statute to conclude that a use that does not involve such development of the land becomes one merely because the property owners granted appellant the right to erect the billboards through leaseholds, rather than erecting the billboards on their own. The leases, by themselves, cannot convert a use of land that does not rise to the level of land development to a use that does. The manner of the creation of appellant's interest in the

subject properties, limited as that interest is, does not alter or enhance the proposed use.

Accordingly, because we find that the proposed construction of these billboards does not fall within the MPC or SALDO definition of land development, we reverse the decision of the Commonwealth Court.

Former Justice Newman did not participate in the decision of this matter.

Chief Justice CAPPY, Justice SAYLOR, EAKIN and BAER join the opinion.

Justice BALDWIN dissents.