**BOROUGH OF MOOSIC**

v.

**ZONING HEARING BOARD OF the BOROUGH OF MOOSIC**

v.

**Giuseppe Basile, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 12, 2010.
Decided Dec. 1, 2010.

W. Boyd Hughes, Dunmore, for appellant.

John J. Brazil, Jr., Scranton, for appellee, Borough of Moosic.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Giuseppe Basile (Basile) appeals from the Order of the Court of Common Pleas of Lackawanna County (trial court), which affirmed the decision of the Zoning Hearing Board of the Borough of Moosic (ZHB) denying a building permit to erect a roof over a 20–foot by 40–foot outdoor concrete patio attached to Basile's restaurant.

Basile is the owner of Grande Pizza Restaurant (Building), which is located at 4200 Birney Avenue in the Borough of Moosic (Borough). On February 28, 2008, Basile submitted a permit application and plans to renovate the Building at an estimated cost of $412,080.00 (Renovation Application). (Ex. 1—Permit Application, R.R. at 60a.) The Renovation Application provided for alterations, plumbing, and electrical work to the Building, as well as for the demolition of an existing 13.4–foot by 16.5–foot wing and second floor porch. The Renovation Application indicated that, following the demolition, a new concrete 20–foot by 40–foot "Outdoor Dining Deck" (Patio) would be constructed. The plans for the Patio included the walls and half walls currently in place on sections of the Patio, but did not include a roof, columns, or iron railings for the Patio. The mechanical and plumbing section of the Renovation Application provided for 4 water closets, 2 lavatories, 5 sinks, 3 fuel pipings, a new 364–ton water boiler or furnace and 3 HVACs. The electrical section of the Renovation Application indicated that there would be $10,000 of electrical work completed in the renovation of the Building. By April 16, 2008, the Borough had approved the entire Renovation Application, including the construction of the Patio, without requiring Basile to submit a land development plan or to seek land development approvals under the Borough's Subdivision and Land Development Ordinance (SALDO) or the Pennsylvania Municipalities Planning Code (MPC).[1] On April 18, 2008, the Borough issued Permit No. 08–10 for the work described in the Renovation Application upon payment of the permit fees in the amount of $6,326.00. (Ex. 3—Construction Permit, R.R. at 239a; Ex. 5—Permit Tracking Record, R.R. at 230a–31a; and Ex. 2—Plans, R.R. at 23a.)

During the renovation, the Borough's Zoning Officer observed a roof being built over the Patio. The Zoning Officer believed that the Renovation Application did not include a roof over the Patio and, on July 18, 2008, he issued a Stop Work Order for the roof. (Ex. 11—Stop Work Order, R.R. at 35a.)

On September 30, 2008, the Borough filed a Complaint in equity against Basile

1. Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as* *amended*, 53 P.S. §§ 10101–11202.

seeking injunctive relief to prevent Basile from continuing to work on the roof over the Patio until he obtained land development approvals from the Borough Planning Commission (Planning Commission). Basile filed an Answer and New Matter alleging that the roof had been approved on June 16, 2008, and that any work that continued after the Stop Work Order was performed only to maintain the structural integrity of the roofing system. Basile further argued that placing a roof over the Patio, which had been previously approved within the Renovation Application of the entire restaurant building, did not require land development approval by the Planning Commission.

On October 23, 2008, the Borough filed a Petition and Rule to Show Cause why a Preliminary Injunction should not be issued to enjoin Basile from constructing the roof over the Patio because, the Borough alleged, land development approvals were required and had not been obtained for this roof. The trial court held a hearing during which the parties expressed disagreement regarding whether, when, by whom, and in which document the roof permit had already been granted. (Trial Ct. Hr'g Tr., December 18, 2008, R.R. at 84a–117a.) In the interest of practicality and resolution, the trial court suggested that the Borough and Basile enter into a stipulation on the record that Basile would submit a Building Permit Application, *nunc pro tunc*, to construct the roof over the Patio (Roof Permit). (R.R. at 90a, 110a–16a.) It was agreed in the stipulation that the *nunc pro tunc* Roof Permit would be considered by the Zoning Officer and, if denied, Basile would appeal the denial to the ZHB. Similarly, if the ZHB upheld the denial, Basile would appeal that decision to the trial court. *Id.*

In compliance with the stipulation entered into at the conclusion of the trial court hearing, Basile submitted the Roof Permit to the Zoning Officer, who denied it because it "D[id] not meet land development requirements." (Ex. 17—Permit Denial, January 13, 2009, R.R. 127a.) Basile appealed the denial to the ZHB, which held hearings on April 21, 2009, and May 20, 2009. The ZHB's findings of fact and decision did not specifically address the land development issue. Instead, the ZHB denied the *nunc pro tunc* Roof Permit stating that the Zoning Officer's refusal should remain "undisturbed."[2] (ZHB Decision, June 11, 2009, R.R. at 147a, 148a.) Basile filed a timely appeal of the ZHB's denial to the trial court. (Notice of Appeal, July 8, 2009, R.R. at 118a–26a.) The trial court, taking no additional evidence, affirmed the denial of the Roof Permit on the basis that, before the Roof Permit could be issued, Basile was required to obtain land development approvals under the SALDO, and Section 107(a) of the MPC, 53 P.S. § 10107(a).[3] Basile now appeals to this Court.[4]

---

**2.** The ZHB concluded that:

[t]he Board is unanimously of the opinion that the Appeal of Giuseppe Basile.... [of] the refusal of the Zoning Officer of the Borough of Moosic to grant an application for permission to erect a roof over the patio at the Grande Restaurant should be undisturbed. The Appeal of Giuseppe Basile is denied. The Board is unanimously of the opinion that Mr. Basile neither applied for nor received a permit to place a roof and other accruements on the concrete pad which was the subject of the original application.

ZHB Decision, June 11, 2009, R.R. at 147a, 148a.

**3.** MPC, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10107(a).

**4.** In a zoning appeal where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board manifestly abused its discretion or committed an error of law.

The question before this Court is whether constructing a roof over a previously approved Patio constitutes "land development" under the SALDO and Section 107(a) of the MPC. Section 107(a) of the MPC defines "Land Development" as any of the following activities:

(1) The *improvement* of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:

(i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or

(ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

(2) A subdivision of land.

(3) Development in accordance with section 503(1.1) [ (referring to submission of plats and surveys and fees therefore under § 10503(1)) ].

53 P.S. § 10107(a) (emphasis added). The SALDO's definition of "land development" is essentially the same as the definition of "land development" in the MPC.[5]

The Borough argues that the term "land development" includes "**any** improvement of a nonresidential building." (Borough's Br. at 18 (emphasis added).) According to the Borough, the SALDO and MPC do not define "improvement," but the Borough further argues that, when a term is not defined, Section 268-5 of the Borough Code[6] provides that the meaning shall be its "standard usage." (Borough Code § 268-5.) The Borough states that Webster's Dictionary defines "improvement" as an enhancement or increase in value. (Borough's Br. at 18.) The Borough contends that the roof over the Patio is an enhancement that increases the value of the Building and, therefore, it constitutes an "improvement" to a nonresidential building and is "land development" under the SALDO and MPC.

In contrast, Basile argues that all that is at issue in this appeal is his request to erect a roof over the previously approved Patio. The construction of the Patio had been approved within the Renovation Application, which the Borough approved for the entire Building without requiring Basile to submit land development plans and obtain land development approvals. Therefore, Basile argues that his *nunc pro tunc* Roof Permit request is not the type of "improvement" contemplated under Section 107(a) of the MPC or the SALDO as "land development," and we must agree.

Our Supreme Court has provided clarification in the application of the definition of "land development" in the MPC, stating:

The definition of land development, of course, does not exist in a vacuum. The significance of the definition is in the consequence of a finding that a proposed land use involves development; that consequence is the requirement of a land development plan. The statutory defini-

*Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

**5.** Both parties agree that the Borough's SALDO defines "land development" identically to Section 107(a) of the MPC. (Borough's Br. at 17–18, Basile's Br. at 23.)

**6.** Section 2 of Section 268–5 of the Borough Code provides: "Any word or term not defined herein shall be used with a meaning of standard usage." (Borough's Brief at 18.)

tion of [a] development plan in the **MPC plainly speaks of large-scale development and the issues that necessarily arise with such development[.]** *Upper Southampton Township v. Upper Southampton Township Zoning Hearing Board,* 594 Pa. 58, 67, 934 A.2d 1162, 1168 (2007) (emphasis added). The Supreme Court noted that the case law on this subject typically involves a large tract of land being divided into smaller parcels for the construction of residential or commercial buildings. *Upper Southampton,* 594 Pa. at 68, 934 A.2d at 1168. "[I]t is precisely this kind of **large-scale development of land,** with an inevitable and concomitant effect on the public generally, that is contemplated by the MPC." *Id.* (emphasis added). In *Upper Southampton,* the Supreme Court held that the construction of a billboard was not the type of large-scale development that required a land development plan. *Id.,* 594 Pa. at 71, 934 A.2d at 1170. "To read the statute otherwise would be unreasonable." *Id.,* 594 Pa. at 69, 934 A.2d at 1169.

Given the Supreme Court's holding in *Upper Southampton,* it would be unreasonable to interpret, as the Borough requests, that the definitions of land development under Section 107(a) and the SALDO are so broad that they would require land development plans and approvals for the construction of a roof over the previously approved Patio. In this case, the Patio was only one component of a substantial renovation of the Building, which was approved in its entirety without land development plans and approvals being required. Basile's construction of the roof over the Patio is certainly not the type of "large-scale development of land" described in *Upper Southampton,* 594 Pa. at 68, 934 A.2d at 1168.

Basile introduced testimony at the hearings that the construction of the roof over the Patio would not increase parking, storm sewer needs, or sewer and water use at the Building. Thomas Shepstone, a planning expert, testified that the parking areas were provided in the original approved plan, there is no sewer to be bonded, no additional water runoff, and no additional sewer improvements needed because its use is inconsequential as a seasonal use area. (ZHB Hr'g. Tr. at 107, June 4, 2009; R.R. at 174a.) Except for possible use during rain, the number of patrons dining on the Patio will not differ because of the addition of a roof. All eight pages of the Renovation Application for the Patio included the large openings in the front wall of the Patio, as well as the open side facing Oak Hill Drive; thus, the use of the Patio would be seasonal and dependent upon weather. Similarly, Donald King, planner of the City of Scranton for twenty-five years, testified that the addition of the roof over the Patio would not change the amount of impervious surface, would not result in any increase of water runoff or sewage, and that there would be no increase in parking areas, traffic, or storm water. (ZHB Hr'g. Tr. 12:21–13:22, June 9, 2009, R.R. 191a.) Finally, putting the roof over the Patio does not increase the square footage of the Patio. In sum, the mere construction of the roof over the previously approved Patio did not transform the Patio, which did not otherwise require the submission and approval of land development plans, into a Patio that required such approval.

Moreover, the Borough's very broad interpretation of the SALDO and MPC as requiring land development approval for **any** improvement to property, no matter how minor, is inconsistent with the Supreme Court's decision in *Upper Southampton* and this Court's case law. *See Tu-Way Tower Co. v. Zoning Hearing Board of the Township of Salisbury,* 688

A.2d 744 (Pa.Cmwlth.1997) (holding that the proposed extension or building of new towers did not constitute subdivision or land development under the MPC); *Marshall Township Board of Supervisors v. Marshall Township Zoning Hearing Board,* 717 A.2d 1 (Pa.Cmwlth.1998) (holding that construction of a pole was not 'land development' or 'subdivision' within the MPC); *Kirk v. Smay,* 28 Pa.Cmwlth. 13, 367 A.2d 760 (1976) (holding that the construction of a single medical office building on the grounds of a completed shopping center did not rise to the level of land development as defined in the MPC).

Finally, to the extent that the parties argue about whether Basile filed an application to construct the roof before he submitted the *nunc pro tunc* Roof Permit, we conclude that such arguments fail to provide much assistance in the resolution of this matter. There is no dispute that the Borough granted the Renovation Application for the Building, which included the demolition of part of the structure, the upstairs deck, and the construction of the Patio. Despite this planned demolition and construction, the Borough did not require land development approvals for the Renovation Permit. The parties disagree about if, when, by whom, and in which document Basile applied for a permit for the roof. However, this question essentially was resolved by the parties entering into the stipulation allowing Basile to submit a permit application, i.e., the Roof Permit, for consideration by the Borough's officials *nunc pro tunc.* The Zoning Officer ultimately denied the Roof Permit on the basis that land development approvals were needed and that denial and rationale was left in place by both the ZHB and the trial court. We note that, in its written decision, the only reason offered by the ZHB for refusing to grant the Roof Permit was that Basile had not applied for or been granted a permit. Given the parties' stipulation allowing Basile to file, and for the Zoning Officer and, eventually, the ZHB to consider the *nunc pro tunc* Roof Permit, such circuitous rationale on the part of the ZHB begs the question whether the Roof Permit should have been issued to Basile given that the roof does not expand the size of the previously approved Patio and does not convert that Patio from outdoor seasonal use to indoor use.

We, therefore, hold that the construction of a roof over the previously approved Patio, does not constitute land development under the SALDO or the MPC and, therefore, Basile is not required to obtain land development approval in order to receive the Roof Permit. Accordingly, we reverse the trial court's order denying the Roof Permit.

### ORDER

NOW, December 1, 2010, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby **REVERSED.**