Edward J. Kirk and Eva A. Kirk, husband and wife, individuals, and PBS, Inc., Appellants *v.* Robert Smay, Borough Manager, Borough of Hellertown, Appellee.

Argued October 4, 1976, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

14

*Cregg E. Mayrosh*, with him *Cohn & Mayrosh*, for appellants.

*Donald B. Corriere*, with him *Haber and Corriere*, for appellees.

OPINION BY JUDGE BLATT, December 22, 1976:

The appellants[1] here filed an action in mandamus with the Court of Common Pleas of Northampton County requesting that the court order Robert Smay, zoning officer of the Borough of Hellertown (Borough), to issue a building permit to them. The court sustained the appellee's preliminary objections, dismissed the complaint and this appeal followed.

The appellants wanted to build a medical office building on the premises of an existing shopping center, a permitted use under the Borough's zoning ordinance in the general commercial district here involved.[2] Section 64.6(1) of the ordinance provided,

---

[1] Edward J. Kirk, Eva A. Kirk, and PBS, Inc.

[2] Section 64.1(3) of the Borough's zoning ordinance provides that professional offices, medical and dental clinics are permitted uses in a general commercial district.

however, that *site plan approval was required for this permitted use,* and Section 63 of the ordinance provided further as follows:

Site Plan Approval for Permitted Uses.

Where site plan approval is required for a permitted use in nonresidential districts said site plan shall be submitted to the Planning Commission for approval *prior to issuing a building permit.* (Emphasis added.)

It is clear, therefore, that the appellants were required to obtain site plan approval as a prerequisite to a building permit.

The lower court believed that the zoning officer's discretion and duty in regard to the issuance of a building permit was the same whether or not the site plan had been approved, and presumed, for the purpose of making its decision here, that the site plan had been approved by the planning commission. It then found that the building permit had been denied by the zoning officer because the proposed facility did not conform with the parking requirements of the zoning ordinance[3] and ruled that an action in mandamus to compel the issuance of a permit would not lie.

It is clear from the evidence in the record that the court below was mistaken, and that the zoning officer here denied the building permit because the appellants had not acquired site plan approval.[4] It is also clear,

---

[3] It is apparently not contested that the proposed construction would violate Section 83.1(2) of the ordinance, which provided the minimum parking requirements for a medical office building.

[4] The zoning officer, on May 28, 1975, sent the appellants the following letter:

Your application for a Zoning & Building Permit for the construction of doctor's offices at the Springhill Shopping Center has been denied. My basis for denial is due to the fact that your original application was processed in accordance with the Hellertown Zoning Ordinance under Sec-

however, that the planning commission disapproved the appellant's site plan because of its failure to provide adequate parking as required by the zoning ordinance, so the mistaken assumption by the lower court is of no consequence here.

Mandamus, of course, is an extraordinary writ which can only issue when the plaintiffs have a clear legal right to the performance of a ministerial act by the defendant, and it will not issue to compel the exercise of discretion. *Commercial Properties, Inc. v. Peternal*, 418 Pa. 304, 211 A.2d 514 (1965). When the legal right to the issuance of a building permit is clear, then mandamus may be used to compel its issuance. *Commercial Properties, Inc. v. Peternal, supra*. The right to a building permit is not clear, however, where the applicant has not met all of the necessary requirements of a zoning ordinance, *Borough of Monroeville v. Effie's Ups and Downs*, 12 Pa. Commonwealth Ct. 279, 315 A.2d 342 (1974), and a zoning officer may not issue a permit where there is such noncompliance. Section 614 of the Pennsylva-

___

tion 63, that site plan approval must be secured from the Planning Commission.

The Planning Commission did review your application, and although various requests for reconsideration of the Planning Commission were made by this office and Boro Council, the Planning Commission did see fit to reject our request which is covered by a letter dated May 16, 1975, a copy of which I am enclosing for your information.

*The main basis for the Planning Commission denying approval is based on Sec. 83 Parking Requirements for Business Center Development.* I am enclosing for your consideration, an Appeal to the Zoning Hearing Board. If it is your desire to follow this route, I would suggest that you return the application with the necessary fee to this office as quickly as possible. Then I will set up a meeting with the Zoning Hearing Board.

If you have any questions please feel free to call at this office. (Emphasis added.)

nia Municipalities Planning Code[5] (Code), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10614.

In this case, because the zoning officer refused to issue the building permit on the basis that the requirements of the zoning ordinance had not been met, *i.e.*, site plan approval was not obtained, the appellants did not have a clear legal right to the permit. Mandamus, therefore, was not a proper action.[6] The lower court, therefore, properly refused to exercise its discretion to issue a writ of mandamus. *Lhormer v. Bowen,* 410 Pa. 508, 188 A.2d 747 (1963).

The appellant argued below that its proposed construction constituted land development and that its site plan should be deemed to have been approved by the Borough's planning commission pursuant to Section 508 of the Code, 53 P.S. §10508, which provides that all applications for approval of a plat shall be acted upon by the planning commission not later than ninety days after such application is filed. "Failure . . . to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented. . . ." Section 508(3) of the Code, 53 P.S. §10508(3). The appellant then argued further that the parking area requirements of the zoning ordinance were among the criteria to be considered by the planning commission and that, because the site plan was "approved," the question of

---

[5] Section 614 of the Code provides, *inter alia*, as follows:

The zoning officer shall administer the zoning ordinance in accordance with its literal terms, and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance.

[6] The lower court properly noted that in ordinary cases, *i.e.*, where mandamus would not be appropriate, jurisdiction of appeals from the actions of zoning officers is vested exclusively in the zoning hearing board. *Suburban Group, Inc. v. Gittings,* 22 Pa. Commonwealth Ct. 295, 348 A.2d 490 (1975).

compliance with the ordinance's parking requirements was thereby foreclosed. There being no other zoning nonconformities in the proposed construction, appellant concluded that its right to a building permit was clear.

We believe that the proposed construction of a single medical office building on the grounds of a completed shopping center clearly does not constitute land development or subdivision under Section 508 of the Code[7] and that the zoning officer's denial of the building permit was based properly upon noncompliance with the zoning ordinance. We, therefore, affirm the lower court's refusal to issue a writ of mandamus.

## ORDER

AND Now, this 22nd day of December, 1976, the order of the Court of Common Pleas of Northampton County, dated April 21, 1976, is affirmed.

---

[7] Section 107(16) of the Code, 53 P.S. §10107(16) defines "Plat" as "the map or plan of a subdivision or land development, whether preliminary or final." Section 107(11) of the Code, 53 P.S. §10107(11), defines "Land development" as follows:

(i) the improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving (a) a group of two or more buildings, or (b) the division or allocation of land or space between or among two or more existing or prospective occupants by means of, or for the purpose of, streets, common areas, leaseholds, condominiums, building groups or other features; (ii) a subdivision of land.

Section 107(21) of the Code, 53 P.S. §10107(21), defines "Subdivision," *inter alia*, as

the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, transfer of ownership or building or lot development. . . .