NORTHEAST PENNSYLVANIA SMSA
LIMITED PARTNERSHIP, d/b/a
Verizon Wireless

v.

The SCOTT TOWNSHIP ZONING
HEARING BOARD

v.

John Smargiassi, Jr., Ann Marie Smargiassi, Kevin Lorenzetti, Susan Lorenzetti and Melanie Brenzel.

Appeal of: John Smargiassi, Jr., Ann Marie Smargiassi, Kevin Lorenzetti and Susan Lorenzetti.

Commonwealth Court of Pennsylvania.

Argued March 7, 2011.

Decided April 18, 2011.

Albert E. Nicholls, Jr., Dunmore, for appellants.

Armand E. Olivetti, Jr., Scranton, for appellee Scott Township Zoning Hearing Board.

Richard M. Williams, Kingston, for appellee Verizon Wireless.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

John Smargiassi, Jr., Ann Marie Smargiassi, Kevin Lorenzetti, and Susan M. Lorenzetti[1] (collectively, Neighbors), appeal from two orders of the Court of Common Pleas of Lackawanna County, (trial court), relating to a dimensional variance permitting Northeast Pennsylvania SMSA Limited Partnership d/b/a Verizon Wireless (Verizon), to erect a monopole cell phone tower (the Tower) near Neighbors' properties. The trial court issued two orders: 1) granting Neighbors intervention, but limited them to addressing only those issues raised by Verizon in its appeal from the denial of a variance by the Scott Township (Township) Zoning Hearing Board (Board); and 2) reversing the Board's denial of Verizon's requested dimensional variance for the Tower. On appeal, Neighbors argue that the trial court erred in: 1) determining that the Board erroneously denied Verizon's requested dimensional variance on the grounds that the variance would alter the character of the neighborhood, endanger public safety, or impair the use or future development of neighboring properties; and 2) limiting Neighbors to the issues raised by Verizon's appeal and not considering the other elements necessary for the grant of a variance.[2]

On March 19, 2009, Verizon applied for a dimensional variance to construct the Tower on a 70' by 70' parcel of land owned by the Township (the Property),[3] which had agreed to lease the Property to Verizon for construction of the Tower. The Tower is a conditional use in the zoning district in which the Property is located. Section 422.2(c)(2)(j) of the Township Zoning Ordinance requires that a communications tower, such as the Tower, have setbacks equal to one-and-a-half times the communications tower's height. Verizon planned the Tower to be 190 feet tall with an eight-foot lightning rod—198 feet tall in total—which would require setbacks of 297 feet pursuant to Section 422.2(c)(2)(j). In its variance application, Verizon requested a dimensional variance to allow the following setbacks: "South—145'; West—47'; East—178'; North—55'." (Zoning Hearing Board Application at 1, R.R. at 249a.)

The Board held a hearing on the variance on April 21, 2009 (First Hearing). The First Hearing was advertised[4] and, per the Township's customary practice, notice was mailed to nearby landowners. However, due to a recent renumbering of street addresses, the neighboring landowners did not receive the mailed notices and none of them attended the First Hearing. At the First Hearing, Verizon presented testimony from Seth Shafer, a civil engi-

---

1. Although listed in the caption, Melanie Brenzel withdrew as an appellant in this matter on September 28, 2010.

2. Because the trial court's order granting intervention, while limiting the scope of that intervention, is an interlocutory order subsumed by the trial court's final order, we dispose only of the appeal related to the trial court's final order.

3. The Property is part of a larger parcel of land owned by the Township.

4. There is a question regarding whether the First Hearing was properly advertised. (Board Hr'g Tr. at 3–4, May 13, 2009, R.R. at 118a–119a.) However, this issue is not material to the current appeal.

neer who prepared the plan for the Tower; Bruce Stegman, an engineer who explained the design of the Tower, including the weather conditions the Tower was designed to withstand and the extremely low incidence of failure or collapse of similar towers; and Mike Fisher, an electrical engineering expert who testified regarding the necessity for the Tower, the reason for its planned height, and why the Property was chosen as the ideal site for the Tower. No party appeared in opposition to the variance. At the conclusion of the First Hearing, the Board unanimously approved the grant of the variance by a voice vote.

Subsequently, the Board discovered that the neighboring landowners had not received notice of the hearing due to the address renumbering and convened a second hearing on May 13, 2009 (Second Hearing). Neighbors and other members of the public were present at the Second Hearing. Because the transcript from the First Hearing was not available, the Board asked Verizon to present the testimony from its witnesses again. Verizon first presented the testimony of Mr. Shafer, whose testimony was substantially the same as in the First Hearing. Verizon next presented testimony from Anthony Handley, an electrical engineer and wireless consultant. Mr. Handley testified that Verizon is licensed by the FCC and is required to provide reliable cell coverage in its service areas, which include the Township. Mr. Handley testified as to the reasoning and necessity for locating the Tower on the Property, as well as the necessity of the planned height of the Tower. He also testified that "the upper limit [electromagnetic field] exposure from the antennas are 190 feet center line [and] will be hundreds of times below what is defined as the FCC exposure limits or a hundred times below what are defined as safe standards for electromagnetic field safety." (Board Hr'g Tr. at 31–32, May 13, 2009, R.R. at 146a–47a.). Finally, Verizon presented testimony from Dave Shaffer. Mr. Shaffer testified regarding Verizon's selection of the Property as the site for the Tower.

Mr. Smargiassi testified that he believed that because his property was within 297 feet of the Tower—in fact, only 55 feet away if the variance was granted—a grant of the variance would prevent him from subdividing his property and giving it to his children or grandchildren to build on. He also testified that he believed the Tower would reduce the value of his property because parts of his property are within the Tower's fall radius and, therefore, cannot be built upon. He also testified that the Tower would impair the view from his property. Mrs. Smargiassi testified that she opposed the Tower because "cancer causing stuff . . . comes out of there." (Board Hr'g Tr. at 99, R.R. at 214a.) Mrs. Lorenzetti testified against the Tower because it would interfere with the view from her property and because she did not believe cell phone reception was necessary. Mr. Lorenzetti testified that he believed his property is within the fall radius of the Tower.

 In its written decision, the Board held that Verizon met four of the five requirements for a dimensional variance, but found that:

> The variance requested, if authorized, will alter the essential character of the district, will substantially or permanently impair the appropriate use or development of adjacent properties, and will be detrimental to the public welfare, all of which is evident from the testimony of adjoining landowners. . . .

(Board Opinion ¶ 27(D).) Verizon appealed the Board's decision to the trial court and Neighbors sought to intervene. In their Petition to Intervene, Neighbors stated that they had inadequate time to prepare for the Second Hearing, lacked

the benefit of counsel and, if permitted to intervene, would attempt to show that other factors required for a variance had not been met, in addition to the one found by the Board. The trial court permitted Neighbors' intervention, but limited them to arguing the issue raised by Verizon on appeal: whether the variance would alter the essential character of the neighborhood, negatively impact adjacent properties, or be detrimental to the public welfare. The trial court held that there was not substantial evidence in the record to support the Board's finding in this regard. The trial court noted that there was no expert testimony regarding the value of Neighbors' homes and that there was no evidence "to support the Board's finding that the danger of a catastrophic failure and resultant tower collapse required denial of Verizon's requested variance." (Trial Ct. Order at 2.) The trial court also reversed the Board's denial of Verizon's variance for the Tower and Neighbors now appeal to this Court.[5]

Before this Court, Neighbors argue that the trial court erred in: 1) determining that the Board erred in denying Verizon's requested dimensional variance on the grounds that the variance would alter the character of the neighborhood, endanger public safety, or impair the use or future development of neighboring properties; 2) limiting Neighbors to the issues raised by Verizon's appeal and not considering the other elements necessary for the grant of a variance; and 3) failing to address Neighbors' arguments regarding lack of notice.[6]

We first address Neighbors' argument that the trial court erred in determining that the Board erred in denying Verizon's requested dimensional variance on the grounds that the variance would alter the character of the neighborhood, endanger public safety, or impair the use or future development of neighboring properties. Section 611 of the Township Zoning Ordinance provides that the Board:

[S]hall have the right to authorize such variances from this Ordinance as are permitted under the Pennsylvania Municipalities Planning Code. The Board may grant a variance provided the following findings are made where relevant in a given case:

A. Unique Characteristics

That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the neighborhood or district in which the property is located;

B. Strict Conformity

That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and that the authorization of a vari-

---

5. "In a zoning appeal where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board manifestly abused its discretion or committed an error of law." *Borough of Moosic v. Zoning Hearing Board of the Borough of Moosic*, 11 A.3d 564, 566–67, n. 4 (Pa.Cmwlth.2010).

6. Counsel for Neighbors stated during oral argument before this Court that Neighbors are no longer pursuing the third issue they raised in this appeal, that the trial court erred in failing to address Neighbors' arguments regarding lack of notice.

ance is therefore necessary to enable the reasonable use of the property.

C. Hardship

That such unnecessary hardship has not been created by the applicant.

D. Affects

That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, not substantially or permanently impair the appropriate use or development of adjacent property, not to be detrimental to the public welfare; and

E. Minimum

That the variance, if authorized, will represent the minimum variance, that will afford relief and will represent the least modification possible of the regulation in issue.

. . . .

(Township Zoning Ordinance § 611, R.R. at 390a.) In this case, the Board held that Section 611(D) was not satisfied. The Board cited Neighbors' testimony as support for this conclusion. (Board Adjudication, Finding of Fact (FOF) ¶ 27(D).) The trial court held, and Verizon argues, that Neighbors did not adduce sufficient evidence upon which the Board could make this finding. However, it is the party seeking a variance who bears the burden of proving that the requirements for grant of the variance are met. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555–56, 462 A.2d 637, 640 (1983).

At the hearing, Neighbors' expressed concerns regarding the impact the *proximity* of the Tower to their properties would have on their property values and their ability to develop their properties in the future. Verizon argues that Neighbors did not offer any expert testimony regarding how the grant of the dimensional variance, i.e., the increased proximity of the Tower,[7] would negatively impact Neighbors' property values or the use or future development of their property. However, as noted above, Verizon was the party with the burden of proof, and it did not offer any expert evidence of its own to show that Neighbors' property values would not be impacted or that their ability to develop their properties in the future would not be negatively impacted. Moreover, Neighbors presented testimony supporting the Board's holding that the dimensional variance would impair the use and development of Neighbors' properties or be detrimental to the public welfare. Most significantly, Mr. Smargiassi credibly testified that part of his property would be within the radial fall zone of the Tower. (Board Adjudication, FOF ¶ 15, May 29, 2009; Board Hr'g Tr. at 126–27, R.R. at 241a–42a.) In fact, Mr. Smargiassi testified that the 198–foot Tower would stand only 55 feet from his property line. (Board Hr'g Tr. at 127, R.R. at 242a.) Mr. Stegman testified that the Tower was designed to fail under extraordinary conditions in the upper-middle region, so as to kink over, rather than collapse from the base. However, as Neighbors point out, Mr. Stegman also testified that cell towers have been known, under rare circumstances, to collapse from the base. (Board Hr'g Tr. at 33, R.R. at 96a.) This possibility could lead a reasonable person to be

---

**7.** It should be noted that, in our analysis, this Court addresses only the increased proximity of the Tower to Neighbors' properties that would arise from the dimensional variance, not the use of the Property for the Tower. As Verizon points out in its brief, the Tower is a conditional use on the Property. Therefore, our analysis only addresses the impact that the dimensional variance would have on Neighbors' properties—that is to say, the *location* of the Tower with the decreased setbacks, rather than the *existence* of the Tower on a neighboring parcel.

wary of building a structure within the Tower's radial fall zone, which could be viewed as substantially and permanently impairing the Smargiassis' ability to develop their property.

For these reasons, this Court holds that the trial court erred when it held that the Board erroneously denied Verizon's request for a dimensional variance. We, therefore, reverse the Order of trial court reversing the denial of the dimensional variance by the Board. Due to our holding on this issue, it is not necessary for us to reach Neighbors' additional issues.

■ It is important to note, however, that the trial court erred in not permitting Neighbors to argue about whether Verizon met the other criteria for the granting of the variance, and not just the one criterion on which Verizon appealed. In this case, the parties agree that Neighbors' intervention is governed by Rule 2327 of the Rules of Civil Procedure, Pa. R.C.P. No. 2327. Intervention, pursuant to Rule 2327, is mandatory unless one of the grounds for refusal set forth under Pa. R.C.P. No. 2329 is present. Rule 2329(1) provides that intervention may be refused if "the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action." Pa. R.C.P. No. 2329(1). The trial court held, and Verizon argues, that the issues Neighbors wished to raise—whether Verizon satisfied the other four criteria for a dimensional variance under Section 611—are not subordinate to the issue Verizon raised—whether the Board erred in determining that it was not entitled to a dimensional variance because it failed to meet the criteria set out at Section 611(D). However, the action in question was not merely Verizon's challenge to the Board's finding on Section 611(D), but rather, Verizon's appeal of the Board's denial of Verizon's request for a dimensional variance. For this reason, and additionally because the issues Neigh-

bors wished to raise address whether Verizon had satisfied all the elements necessary for a variance, we conclude that these were claims that were "subordinat[e] to" and "recogni[zed] of the propriety of" Verizon's appeal, such that intervention was the proper means by which Neighbors should raise such issues. Pa. R.C.P. No. 2329(1).

Moreover, Neighbors had no other way to raise these issues but through intervention. Because the Board denied Verizon's request for a variance, Neighbors were not aggrieved by the Board's decision and did not have standing to appeal it. *Basile v. H & R Block, Inc.,* 601 Pa. 392, 398–99, 973 A.2d 417, 421–22 (2009); *Thompson v. Zoning Hearing Board of Horsham Township,* 963 A.2d 622, 624 (Pa.Cmwlth.2009). A party is not aggrieved merely because it disagrees with the factual basis or legal rationale of a decision, if the party's interest is not actually adversely affected. *ACS Enterprises, Inc. v. Norristown Borough Zoning Hearing Board,* 659 A.2d 651, 654 (Pa.Cmwlth.1995). Therefore, although Neighbors were not aggrieved by the Board's decision, they disagreed with findings of fact and conclusions of law made by the Board that would support the granting of a variance. Therefore, Neighbors' only course of action was to *intervene,* rather than appeal, and attempt to point out the Board's errors.

Verizon argues that Neighbors could, in fact, have taken a precautionary cross-appeal to challenge the Board's findings on the remaining four criteria, particularly after Verizon filed its appeal. In support, Verizon cites *Sell v. Douglas Township Zoning Hearing Board,* 149 Pa.Cmwlth. 425, 613 A.2d 162 (1992) and *Leckey v. Lower Southampton Township Zoning Hearing Board,* 864 A.2d 593, 596 n. 2 (Pa.Cmwlth.2004). However, these cases are distinguishable.

In *Sell,* the property owners requested a special exception, *or alternatively,* a use variance to continue operating a milk hauling business on their property. *Sell,* 613 A.2d at 163. The Board granted the property owners' use variances and neighboring landowners appealed the grant of the use variances. *Id.* The property owners *intervened* in the neighboring landowners' appeal and attempted to argue that the Board should have granted them *special exceptions* instead of use variances. *Id.* The trial court refused to address this issue on the grounds that the only issue raised by the appeal was the grant of the use variances. *Id.* The trial court properly reversed the zoning board's grant of use variances. *Id.* The landowners appealed to this Court, arguing that the trial court erred in not allowing them to argue that they should have received a special exception. *Id.* at 163–64. This Court upheld the trial court's decision on the basis of Rule 2329(1); because the appellants had not raised the issue of the special exception, intervenor landowners could not raise it. *Id.* at 164. In other words, in *Sell,* the intervenors were not attempting to argue the propriety of the use variances they had been granted, but were attempting to argue that they should have received an entirely different form of relief. Thus, because they were arguing they should have received a different form of relief from the zoning board, their claim was not subordinate to the appellants' argument that they should not have received the use variances. Here, the trial court and Verizon attempt to draw the "action" for purposes of Rule 2329(1) too narrowly—it is not merely whether the Board erred in its holding on one factor of Verizon's variance, but whether the Board erred in denying Verizon a variance. Thus, Neighbors' claims that the Board was correct to deny Verizon a variance, based on other factors than the one relied upon by the Board, is still subordinate to the appeal of the denial of the variance.

Similarly, in *Leckey,* the claim before the trial court was landowners' appeal of conditions imposed by a zoning board on a special exception use granted to the landowners. *Leckey,* 864 A.2d at 595. The intervenor township attempted to argue on appeal to the trial court that the zoning board erred in finding landowners' snowplowing business was an accessory use to the special exception nursery use. *Id.* at 596 n. 2. The trial court did not consider this claim because it was not raised by the appellants, and this Court agreed. *Id.* Again, the issue sought to be raised by the intervenor in that case involved a completely different form of relief than the one placed at issue by the appellant.

For the above reasons, we must reverse the Order of the trial court.

### ORDER

**NOW,** April 18, 2011, the Order of the Court of Common Pleas of Lackawanna County in the above-captioned matter, dated August 5, 2010, is hereby **REVERSED.**