## Ruckert v. Wayne Township

*Alan T. Shuckrow* and *Jordan L. Strassburger*, for plaintiffs.

*Ryan C. Long*, for defendant Wayne Township.

*Gene G. Dimeo*, for defendants Frank and Fanny Ottaviani.

MOTTO, *P.J.*, September 19, 2013—Before the court for disposition is the plaintiffs' motion for judgment on the pleadings. The plaintiffs ("Ruckerts") contend that because of admissions contained in the answer and new matter of the defendants ("Ottavianis"), the court must find as a matter of law that the Ottavianis are engaged in land development as the result of improvements made by them to roadways, therefore entitling the Ruckerts to a court order compelling the Ottavianis to comply with, and the defendant township to enforce, the township's subdivision and Land Development Ordinance ("SALDO"). If applicable, SALDO would require the Ottavianis to submit plans to the township with respect to their development of such roadways. The complaint seeks to compel the defendant township to enforce its SALDO ordinance by prohibiting the Ottavianis from developing roadways located within the subdivision plan in which both the Ruckerts and the Ottavianis are lot owners without first submitting appropriate plans under the ordinance and securing proper approval from the township. In general, the Ottavianis allege in their answer that the activity attributed to them, the improvement of certain roadways within a subdivision plan over which they enjoy an easement, does not constitute land development and therefore does not implicate SALDO.

The Ruckerts' complaint brought pursuant to Section 617 of the Municipalities Planning Code ("MPC"), 53 P.S.

§10617 to compel defendants' compliance with SALDO alleges that the Ruckerts and the Ottavianis are both property owners in a residential subdivision in Wayne Township known as the North Ellwood Heights plan. The Ruckerts own lots 256 through 264, 299, 300, 265 and 266 in the plan recorded in Lawrence County plot Book Volume 8, Page 9C. The Ottavianis own Lots 22 through 23, 309 through 312, 313, 314, 316 through 318, and Lots 256 through 262. Renlee Avenue is depicted as a street in the plan and is maintained by the defendant township up to the point of the Ruckerts' driveway. The last 73 feet of Renlee Avenue east of the Ruckerts' driveway is a shared private road of the plan and not maintained by the township. Union Street is a plotted unopened road in the plan and has never been maintained or utilized by the township.

The complaint alleges that the Ottavianis' property in the plan is accessible from a public road, Creston Avenue, which runs parallel to Renlee Avenue. The public portion of Creston Avenue ends at the Ottavianis' private driveway and continues eastward as an unopened road in the plan, not maintained or utilized by the township. The Ruckerts' property abuts the unopened portion of Creston Avenue. The Ottavianis also own and are in the process of developing three lots of land located directly to the east of the plan, identified as lots 2, 3 and 4 in the Ottaviani plan no. 2. The Ottaviani plan is residential and accessible from the unopened portions of Renlee, Union and Creston roadways.

The complaint alleges that beginning in 2002, the Ottavianis began developing the non-public, seventy-three foot eastern end of Renlee Avenue to its intersection

with Union Street by clearing brush and small trees; that in May 2002 a two-acre lot was subdivided from the original Ottaviani parcel outside the plan and sold; that in 2004 the Ottavianis continued developing the non-public, eastern end of Renlee Avenue by placing large amounts of bricks, stones and other materials to construct the road; that prior to Ottaviani plan no. 2, the Ottaviani plan no. 1 was adopted in September 2005 and Lot 1 thereof was sold on November 3, 2005; and that a one-family residence has been built on that lot by the purchasers.

The complaint further alleges that in 2010, the Ottavianis continued to develop the unopened portions of Union and Creston roadways by clearing brush and trees from those roadways; that in 2011, the Ottavianis graded Creston Avenue and added large stones to it to build the roadway. The complaint alleges that the Ottavianis are in violation of numerous sections of SALDO because of their failure to submit plans relative to the development of Renlee, Union and Creston roadways in violation of §104.3 of SALDO.

The Ruckerts' motion for judgment on the pleadings is based upon specific admissions made by the Ottavianis in their answer to the complaint, specifically in paragraphs 16, 18, 19 and 22. The admissions upon which the Ruckerts rely are set forth as follows:

16. ...improved the unopened portion of Renlee Avenue by exercising their easement rights, with all improvements being within the scope of the easement, for ingress and egress of pedestrian and vehicular traffic.

18. ...developed unopened portions of Union Street and

Creston Avenue, as they are entitled, by being owners of an easement and having the right to make such improvements to that easement.

19. ...that Defendants made improvements to the unopened portion of Creston Avenue, being entitled to do so as easement owners...

22. ...actions in improving the unopened portions of Renlee Avenue, Union Street and Creston Avenue, consist of mere improvements to existing unopened portion of the roadway to which [they] are entitled to perform...

Both the township and the Ottavianis admit that the Ottavianis have submitted no plans with the township and/or that no plans were approved by the township, both defendants contending that the submission of such plans are not required as the Ottavianis conduct does not implicate SALDO.

The question presented by the Ruckerts' motion for judgment on the pleadings is whether the Ottavianis' admissions to making improvements to the roadways as owners of easements in such roadways as lot owners within the subdivision plan implicates SALDO as a matter of law.

The right of the Ottavianis to improve the unopened roadways in the North Ellwood Heights Plan as a lot owner within a plan has been determined by previous litigation. In *Ruckert v. Ottaviani*, Case No. 10692 of 2006, C.A., Lawrence County, the Ruckerts had sought to enjoin the Ottavianis from improving the unopened portions of Renlee Avenue and Union Street. The Honorable Thomas

M. Piccione of this court granted a motion for summary judgment in favor of the Ottavianis in an opinion dated April 26, 2010. In that case the court said:

> In the case at bar, [Ottavianis] owned property within the North Ellwood Heights Plan and acquired an easement over Renlee Avenue. Therefore, [Ottavianis] cannot be enjoined from exercising their right of easement over Renlee Avenue...

> The court finds that *Drusedum v. Guernaccini* to be more persuasive on the issue presented. In Drusedum, both parties owned property within the plot plan and possessed rights of easement over Forest Avenue, the private road in question. *Drusedum*, 380 A.2d at 895. The defendants owned property to the north and south of Forest Avenue while the plaintiffs owned property within the plan but not abutting the disputed portion of Forest Avenue. *Id.* ...the plaintiffs sought an injunction forbidding the defendants from erecting the barrier. *Id.* The Superior Court reversed the trial court's denial of injunctive relief, finding that the plaintiffs had a "right of ingress and egress to and from their property over any and all of the roads in the plan and this necessarily involves the right to enter or leave the subdivision over any of its roads". *Id.* at 897. The Superior Court reasoned that:

> [i]f the [defendants] had the right to barricade Forest Avenue, adjacent property owners had similar rights to barricade the terminal points of every other street in the plan before they were accepted as public streets. That would mean that property owners had no right of ingress or egress from or to points outside the plan. To

make such a claim as to answer it. The fact that the property adjoined the plan as a parking lot instead of an adjoining road does not diminish the [plaintiff's] rights to enter or leave the subdivision by way of forestry.

*Id.* The Superior Court determined that the defendants could not interfere with the plaintiffs' "private contractual right to travel in getting to or from their homes within a subdivision" or their "similar right on behalf of any member of the public who desire to move to or from [plaintiffs'] property. *Id.*

...

[Ruckerts] argue that, even if [Ottavianis] have a right to access their property outside of the North Ellwood Heights Plan using Renlee Avenue, defendants are not entitled to extend Renlee Avenue. An owner of an easement has the right to make improvements to that easement so long as the improvements are consistent with the use for which the easement was created. *Florek v. Com. Dep. of Transp.*, 493 A.2d 133, 137 Pa. Cmwlth. (1985); *Rusciolelli v. Smith*, 171 A.2d 802, 807 (Pa. Super. 1961). [Ottavianis] seek to place road materials on an unopened portion of Renlee Avenue that already acts as a road for pedestrians and vehicles. The improvements the defendants desire "are solely for the purpose of rendering their easement usable." *Boro of Phoenixville v. Kovach*, 449 A.2d 793, 795 (Pa. Cmwlth. 1982). The court finds that [Ottavianis'] improvements are not inconsistent for the use for which the easement was created.

The Ruckerts concede that the Ottavianis have the

right to make improvements upon the roadways in question because of their ownership of an easement in the said roadways, but contend that such improvements constitute development and is governed by SALDO. Section 104.3(a) of the township's SALDO ordinance provides that "land development" must comply with the regulations contained in the ordinance. The ordinance, at §2.02, defines "improvements" and "land development" as:

Improvements: Those physical additions and changes to the land that may be necessary to produce usable and desirable lots.

Land Development: Any of the following activities:

(1) the improvement of one lot or two or more contiguous lots, tracks or parcels of land for any purpose involving:

(a) a group of two or more residential or nonresidential buildings, whether proposed initially or accumulatively, or a single non-residential building on a lot or lots regardless of the number of occupants or tenure; or,

(2) the division or allocation of land or space, whether initially or accumulatively, between or among two or more existing prospective occupants by means of, or for the purpose of streets, common areas, lease holds, condominiums, building groups, or other features.

...

The definition of "land development" in the township ordinance mirrors and is identical to the definition of land development in §1.07 of the Municipalities Planning Code ("MPC"). 53 P.S. §10107(1)(ii).

By improving the unopened portions of Renlee Avenue, Union Street and Creston Avenue, the Ottavianis admit that they are making improvements to the existing unopened portions of the roadways, and are entitled to make improvements as holders of easements in such roadways. However, the question of whether such improvements constitute "land development" as defined by SALDO is a much broader question. Not every improvement to real estate implicates SALDO.

In *Upper South Hampton Township v. Upper South Hampton Township Zoning Hearing Board*, 594 Pa. 58, 934 A.2d 1162 (2007), the Supreme Court provided clarification on the application of the definition of "land development" in the MPC stating:

> The definition of land development, of course, does not exist in a vacuum. The significance of the definition is in the consequence of a finding that a proposed land use involves development; that consequence is the requirement of a land development plan. The statutory definition of development plan in the MPC plainly speaks of large-scale development and the issues that necessarily arise with such development.

*Id.* at 67, 934 A.2d at 1168.

Section 10507 of the MPC, which sets forth the effect of a municipality's SALDO, speaks to development on a large scale:

> Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article, no subdivisions or land development of any lot, tract or parcel of land shall be made, no

street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, except in accordance with the provisions of such ordinance.

53 P.S. §10507. *Id.* at 67, 934 A.2d at 1168.

In *Upper South Hampton Twp.*, *supra*, the issue was whether the construction of billboards qualifies as "land development" for purposes of the MPC, 53 P.S. §10107, and the Upper South Hampton Township Subdivision and Land Development Ordinance, Section 202, thereby authorizing a township to require land development approval before the billboards can be erected. The Supreme Court found that the term "land development" does not encompass the construction of billboards and reversed the Commonwealth Court's ruling.

The *Upper South Hampton Township* court found that the MPC, when viewed as a whole, clearly is intended to apply the allocation of land in such a way that issues related to public use, water management, sewers, streets and the like must be addressed. Consistently with this focus, the case law typically involves a division of a tract of land into smaller parcels for the construction of either residential or commercial buildings. *See Kassouf v. Township of Scott*, 584 Pa. 219, 883 A.2d 463 (2005)(residential subdivision); *Mountain Village v. Bd. Of Supervisors of Longswamp Twp.*, 582 Pa. 605, 874 A.2d 1 (2005)(110-unit expansion of mobile home park); *Meadows of Hanover Development, Inc. v. Board of Supervisors of South Hanover Twp.*, 557 Pa. 478, 734 A.2d 854 (1999)(construction of homes and

commercial buildings on a 221-acre tract); *Shoemaker v. Lehigh Twp.*, 544 Pa. 304, 676 A.2d 216 (1996)(subdivision of property into 65 one-half acre residential lots); *Hart v. O'Malley*, 544 Pa. 315, 676 A.2d 222 (1996)(increase in number of units in mobile home park); *Pocono Green, Inc. v. Board of Supervisors of Kidder Twp.*, 523 Pa. 601, 568 A.2d 612 (1990)(planned residential development). The court in *Upper South Hampton Township* found that the construction of a billboard was not the type of large-scale development that required a land development plan. *Id.* 594 Pa. at 71, 934 A.2d at 1170. The type of division or allocation of land contemplated by the MPC-a housing development, condominiums, or building groups, implicates legitimate government concerns affecting the general public, such as sanitary sewer, water, storm water management, parking areas, driveways, roadways, curbs and sidewalks. The construction of a billboard simply does not give rise to any of these concerns. To read the statute otherwise would be unreasonable. *Id.*

In *Lehigh Asphalt Paving and Construction, Co. v. Board of Supervisors of East Penn Twp.*, 830 A.2d 1063 (2003), the appellant sought to extend existing mineral rights by expanding its quarry over an undetermined amount of land. The Commonwealth Court found that the land development plans for the quarry expansion came within the definition of "land development" because it contemplated the allocation of land between the existing single-family residential use and the expansion of the quarry use.

In *Borough of Moosic v. Zoning Hearing Board of Borough of Moosic*, 11 A. 3d 564 (Pa. Cmwlth. 2010) the Commonwealth Court held that the construction of

a roof over a patio that was previously approved did not transform the patio, which did not otherwise require the submission and approval of land development plans, into a patio that required such approval. The Commonwealth Court in *Moosic* relied heavily upon the above-noted provisions of *Upper South Hampton* which held that it was the large-scale development of land, with an evitable and concomitant effect on the public generally that is contemplated by the MPC as constituting "land development" under §107(a) and SALDO. In so holding, *Moosic* rejected the argument that SALDO and MPC require land development approval for any improvement to property no matter how minor wherein the court stated:

> Moreover, the borough's very broad interpretation of the SALDO and MPC as requiring land development approval for any improvement to property, no matter how minor, is inconsistent with the Supreme Court's decision in *Upper South Hampton* and this court's case law. *See Tu-Way Towers Co. v. Zoning Hearing Board of the Township of Salisbury*, 688 A.2d 744 (Pa. Cmwlth. 1997)(holding that the proposed extension or building of new towers did not constitute subdivision or land development under the MPC); *Marshall Township Board of Supervisors v. Marshall Township Zoning Hearing Board*, 717 A.2d 1 (Pa. Cmwlth. 1998)(holding that construction of a pool was not "land development" or "subdivision" within the MPC); *Kirk v. Smay*, 28 Pa. Cmwlth. 13, 367 A.2d 760 (1976)(holding that the construction of a single medical office building on the grounds of a completed shopping center did not rise to the level of land development as defined in the MPC).

Here, the record is unclear as to the Ottavianis' purpose

in improving the roadways in question. It cannot be determined upon this record whether the improvement of the roadways is part of a plan involving the division of tracts of land into smaller parcels for the construction of residential or commercial buildings or for the further subdivision of property into residential lots, or otherwise as part of a planned residential development. The complaint makes reference to the Ottavianis owning and being in the process of developing three lots of land located directly to the east of the North Ellwood Heights plan, a residential development, and that this development is accessible from the unopened portions of Renlee, Union and Creston roadways. However, it cannot be determined upon the state of the record whether the roadways in question are a part of the development plan for that development or whether the improvements to the easements by the Ottavianis would be merely an incidental benefit to an approved subdivision plan that does not rely upon the construction of the roadways in question for approval. Under the SALDO land development definition, in order for SALDO to apply, the improvement of a tract or parcel of land must be for a purpose involving (1) a group of two or more residential and non-residential buildings, or (2) a single non-residential building on a lot or lots regardless of the number of occupants or tenure. Under *Upper South Hampton*, SALDO and MPC is meant to apply to the large-scale development of land. A trial is necessary to development a full record so that the court can determine whether the Ottavianis are in fact engaged in large-scale land development as contemplated by *Upper South Hampton*, aside from their interest in making improvements upon the unopened streets in which they hold an easement. Therefore, plaintiffs' motion for

judgment on pleadings must be denied.

## ORDER OF COURT

And now, this 19th day of September, 2013, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the plaintiffs' motion for judgment on the pleadings is denied.